**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**PEORIA DIVISION**

| | |
|---|---|
| **JB BROWN, JR.,** | |
| **Petitioner,** | |
| **v.** | **Case No. 17-2115-MMM** |
| | **Criminal Case No. 14-20007** |
| **UNITED STATES OF AMERICA,** | |
| **Respondent.** | |

## MEMORANDUM OPINION AND ORDER

Presently before the Court are Petitioner's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (ECF No. 1) and Motion to Invoke Rule 12 (ECF No. 13). For the reasons stated herein, Petitioner's Motions are DENIED, and his Petition is DISMISSED. This matter is now TERMINATED.  The Clerk of Court is directed to close the case.

## BACKGROUND

On June 26, 2013, J.B. Brown, Jr. was indicted by a grand jury for unlawful possession of a controlled substance with the intent to deliver, and unlawful possession of a weapon by felon. Prior to his arrest, a confidential informant informed the Kankakee Sheriff's Department that Brown was selling heroin out of his home.  The informant also signed an affidavit indicating he had purchased heroin directly from Brown within the last ten days.  Acting on this information, the local Sheriff's Department obtained a valid search warrant, executed the warrant, and found Brown at his residence with over 100 grams of heroin, a loaded semi-automatic weapon, drug trafficking items, and approximately $4,500 in cash.  During a subsequent videotaped interrogation, Brown admitted to the possession of both the drugs and the gun.

On July 31, 2014, after a three-day trial in federal court, a jury found Brown guilty of both the aforementioned offenses. On December 1, 2014, Brown was sentenced to 174 months in prison for his drug conviction and an additional 120 months for possession of a firearm. The sentences were to run concurrently. Two days after his sentencing, Brown appealed his conviction, arguing the trial court improperly rejected his *Batson* challenge during jury selection. *United States v. Brown*, 809 F.3d 371 (7th Cir. 2016). On January 4, 2016, the Seventh Circuit denied his appeal and affirmed the conviction. *Id.* Three months later, Brown petitioned the Supreme Court for a writ of certiorari, but his petition was denied on May 16, 2016. *Brown v. United States*, 136 S. Ct. 2034 (2016). Brown then proceeded to bring the § 2255 motion at hand.

## PROCEDURAL HISTORY

On May 15, 2017, Brown filed his § 2255 Motion with this Court outlining four main arguments, all under the umbrella of ineffective assistance of counsel, to collaterally attack his criminal sentence.[1] On June 12, 2017, the Government filed its Response,[2] and on July 24, 2017, Brown filed his Traverse.[3] The same day Brown filed his Traverse, he also filed a Brief in Support of his Motion,[4] which outlined five arguments for relief, one of which was not included in his original pleading. (*See* Brief at 13-14.) Additionally, on May 21, 2018, Brown filed a Motion to Invoke Rule 12, summarizing the arguments in his § 2255 Motion and again asking the Court for relief. On October 11, 2018, the Court entered a Text Order requesting that the Government file a supplemental response addressing the additional argument outlined in Brown's Brief, as the Brief was submitted more than two months after the filing of Brown's § 2255 Motion. On

---

[1] Hereinafter referred to as "Mot.".
[2] Hereinafter referred to as "Resp.".
[3] Hereinafter referred to as "Traverse".
[4] Hereinafter referred to as "Brief".

October 19, 2018, the Government filed its Supplemental Response,[5] and on December 13, 2018,

Brown filed his Amended Traverse.[6]  This Order follows.

## LEGAL STANDARD

A prisoner may move to vacate, set aside or correct his sentence if he claims "the sentence

was imposed in violation of the Constitution or laws of the United States, or that the court was

without jurisdiction to impose such a sentence, or that the sentence was in excess of the maximum

authorized by law[.]"  28 U.S.C. § 2255(a) (2008).  "Section 2255 . . . is confined to correcting

errors that vitiate the sentencing court's jurisdiction or are otherwise of constitutional magnitude."

*Guinan v. United States*, 6 F.3d 468, 470 (7th Cir. 1993) (internal citation omitted), *abrogated on

other grounds by Massaro v. United States*, 538 U.S. 500 (2003).  "Thus, relief under Section 2255

is 'reserved for extraordinary situations,' as a collateral attack pursuant to Section 2255 is not a

substitute for a direct appeal."  *Mejia-Chavez v. United States*, No. 16-cv-168, 2016 WL 7100354,

at *2 (S.D. Ill. Dec. 6, 2016) (citing *Varela v. United States*, 481 F.3d 932, 935 (7th Cir. 2007)).

In evaluating a 2255 motion, "[t]he district court must review the record and draw all reasonable

inferences in favor of the government."  *Messinger v. United States*, 872 F.2d 217, 219

(7th Cir. 1989).

Procedurally, unless a movant demonstrates changed circumstances in fact or law, he may

not raise issues already decided or waived on direct appeal.  *Olmstead v. United States*, 55 F.3d

316, 319 (7th Cir. 1995).  However, "there is no procedural default for failure to raise an

ineffective-assistance claim on direct appeal."  *Massaro*, 538 U.S. at 503-04.  Likewise, a Section

2255 motion cannot pursue non-constitutional issues that were not raised on direct appeal

regardless of cause and prejudice.  *Lanier v. United States*, 220 F.3d 833, 842 (7th Cir. 2000).  The

---

[5] Hereinafter referred to as "Resp. II".
[6] Hereinafter referred to as "Traverse II".

only way such issues could be heard in the Section 2255 context is if the alleged error of law represents "a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Addonizio*, 442 U.S. 178, 185 (1979).

**Ineffective Assistance of Counsel**

As it relates to the 2255 motion at hand, criminal defendants are guaranteed the right to effective assistance of counsel under the Sixth Amendment. *Watson v. Anglin*, 560 F.3d 687, 690 (7th Cir. 2009). To demonstrate ineffective assistance of counsel, the defendant must show that (1) his attorney's performance fell below an objective standard of reasonableness, and (2) the deficient performance caused him prejudice. *Adams v. Bertrand*, 453 F.3d 428, 434 (7th Cir. 2006). The district court's review of counsel's performance is to be highly deferential and it must defer to his strategic decisions. *Hough v. Anderson*, 272 F.3d 878, 891 (7th Cir. 2001). The court must also carefully consider whether the attorney brought to bear the skill and knowledge that allows for a proper adversarial testing process, considering all the circumstances. *Id.* at 890. In terms of causing prejudice, the defendant must demonstrate a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 694 (1984). A reasonable probability is one that is sufficient to undermine confidence in the outcome. *Id.*

**DISCUSSION**

In his § 2255 Motion, Brown outlines four arguments to collaterally attack his criminal sentence. Those arguments are that his criminal attorney failed to: (i) argue that an arrest warrant, and not a search warrant, was necessary to arrest him and take him into custody; (ii) challenge the discrepancy in the quantity of heroin listed in the Information and Bill of Indictment filed in state court with the quantity of heroin for which Brown was convicted in federal court; (iii) summon

the state's forensic scientist as a witness at trial and cross-examine her regarding the drug-testing

methods and calculations used to determine the drug quantity for which he was charged and

convicted; and (iv) challenge the information used to obtain the executed search warrant of his

residence. (Mot. at 5-9.) The Government responds by asserting that Brown is not entitled to

relief, as each of his arguments lack merit. (*See generally*, Resp.)

## I. RELATION BACK AND PETITIONER'S ADDITIONAL CLAIM

Before the Court addresses the merits of Brown's Motion, it notes he added a fifth argument

in his Brief that he failed to include in his original motion. His fifth argument alleges his criminal

counsel failed to enter plea negotiations on his behalf and incorrectly advised him of the sentencing

ramifications of pleading guilty instead of proceeding to trial. (*See* Brief at 19-20.) In response

to Brown's additional argument, the Government maintains the new argument fails to relate back

to Brown's original motion, as it is a "[n]ew claim[ ] based on events separate in both time and

type from the original claim[ ]," and must be dismissed as untimely. (Resp. II at 5.) The Court

agrees.

In *Mayle v. Felix*, 545 U.S. 644 (2005), the Supreme Court addressed the issue of amended

habeas pleadings and the relation-back provision. It observed:

> In ordinary civil proceedings . . . Rule 8 of the Federal Rules of Civil Procedure,
> requires only a short and plain statement of the claim showing that the pleader is
> entitled to relief. Rule 2(c) of the Rules Governing Habeas Corpus Cases requires
> a more detailed statement. The habeas rule instructs the petitioner to specify all the
> grounds for relief available to [him] and to state the facts supporting each ground.
> By statute, Congress provided that a habeas petition may be amended . . . as
> provided in the rules of procedure applicable to civil actions. The Civil Rule on
> amended pleadings, Rule 15 of the Federal Rules of Civil Procedure, instructs: An
> amendment of a pleading relates back to the date of the original pleading when . . .
> the claim . . . asserted in the amended pleading arose out of the conduct, transaction,
> or occurrence set forth or attempted to be set forth in the original pleading.

545 U.S. at 649 (internal quotation marks and citations omitted). The *Felix* Court went on to distinguish civil proceedings from habeas corpus petitions, explaining that each separate collection of facts supporting grounds for relief in petitions constitute a new "occurrence" and should be pleaded individually. *Id.* at 661. It also held, "[a]n amended habeas petition . . . does not relate back . . . when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Id.* at 650. Finally, other district courts in this Circuit have supported the rubric that "[n]ew claims of ineffective assistance of counsel do not automatically relate back to prior ineffective assistance claims." *See, e.g., Vallar v. United States*, No. 12-CV-534, 2013 WL 3147351, at *3 (N.D. Ill. June 19, 2013) (citing *United States v. Gonzalez*, 592 F.3d 675, 680 (5th Cir. 2009)).

Brown's contention(s) that his criminal counsel failed to attempt to enter plea negotiations on his behalf, and incorrectly informed him of the sentencing ramifications of proceeding to trial instead of pleading guilty, fail to arise from the conduct, transactions, or occurrences set forth in his original pleading. His additional argument is also comprised of facts that differ in both time and type from the four arguments outlined in his original pleading. Even construing Brown's Brief in the liberal manner in which the Court is directed to interpret pro se habeas pleadings, the fifth argument included in his Brief was not intended to amend and/or modify any of the existing arguments in his original § 2255 Motion. Accordingly, the additional argument fails to relate back to his original pleading and is DISMISSED.

## II.     PETITIONER'S REMAINING GROUNDS FOR RELIEF

Having resolved the issue of whether to include Brown's fifth argument in its analysis, the Court addresses the four arguments outlined in his original § 2255 Motion in turn.

### A.     Failure to Obtain Arrest Warrant

Brown first argues that an arrest warrant is required for authorities to arrest a criminal suspect and take him into custody. He contends that without an arrest warrant, his arrest was unlawful, and had his prior counsel highlighted this fact, the outcome of his criminal trial would have been different. (Brief at 8-9.) The Government responds by arguing that pursuant to the Fourth Amendment, police officers may make an arrest based on probable cause without an arrest warrant, and that the officers had sufficient probable cause when they found Brown in his home with over 100 grams of heroin, a loaded semi-automatic weapon, drug trafficking items, and more than $4,000 in cash. (Resp. at 5.)

The Fourth Amendment to the United States Constitution guarantees "[t]he right of the people to be secure . . . against unreasonable searches and seizures," U.S. CONST. amend. IV, but the text does not specify when an arrest or search warrant must be obtained. *Kentucky v. King*, 563 U.S. 452, 459 (2011). The Seventh Circuit, however, addressed the issue of a warrantless arrest under the Fourth Amendment, and declared:

> [A]n officer may make a warrantless arrest consistent with the Fourth Amendment if there is 'probable cause to believe that a crime has been committed.' An officer has probable cause to make an arrest only when the facts and circumstances within his knowledge and of which he has reasonably trustworthy information are sufficient to warrant a prudent person in believing that the suspect has committed an offense. Courts look to a totality of the circumstances, and ask whether a reasonable officer would believe that the suspect had committed a crime.

*United States v. Daniels*, 803 F.3d 335, 354 (7th Cir. 2015) (internal citations omitted). In addition to the criteria outlined in *Daniels*, probable cause can also be established by an informant's tip along with corroboration by police work. *United States v. Banks*, 405 F.3d 559, 570 (7th Cir. 2005).

In viewing the totality of the circumstances, it is evident there was probable cause to support Brown's arrest for possession of heroin and a firearm. Before his arrest and the execution of the search warrant, police received information from a confidential informant that Brown had sold the informant heroin from his home within the last ten days.[7] Based on that information, the police obtained a valid search warrant to enter Brown's residence and search for contraband.[8] Upon searching the residence, police found over 100 grams of heroin, a semi-automatic weapon, ammunition for the weapon, approximately $4,500 in cash, and drug packaging equipment.[9] Thus, the informant's affidavit, the existence of a valid search warrant, and the damning evidence found in his home, support the finding that police had probable cause to arrest Brown on July 10, 2013.

Moreover, this Court finds Brown's criminal attorney did not have a duty to challenge the lack of an arrest warrant at trial. Instead of challenging the inconsequential lack of an arrest warrant, his counsel challenged the scope of the executed search warrant and argued Brown's cellphone (and the incriminating text messages therein) was outside the parameters of the warrant.[10] His attorney also argued Brown was incorrectly linked to the drugs and contraband found in the residence listed on the search warrant, as the residence was that of his estranged wife, and the drugs were the possessions of another man.[11] Defense counsel's decision to waive

---

[7] ECF No. 7 at 1-4 (Case No. 17-CV-2115)
[8] *Id.* at 1-5.
[9] *Id.* at 7.
[10] Motion to Suppress, ECF No. 29, USA v. J.B. Brown Jr. (Case No. 14-CR-20007).
[11] Tr. of Trial Day 1 at 40-43, ECF No. 72, USA v. J.B. Brown Jr. (Case No. 14-CR-20007).

argument of a frivolous challenge was a reasonable tactical decision and Brown's first ground for ineffective assistance is DENIED.  *See United States v. Rezin*, 322 F.3d 443, 446 (7th Cir. 2003), *overruled on other grounds by United States v. Geasland*, 694 Fed. App'x 422 (7th Cir. 2012) (holding a defendant's lawyer has no duty to make a frivolous argument which may distract the court from the strong argument(s) and make the Court less likely to rule in the defendant's favor).

### B.    Failure to Challenge Discrepancy in Drug Quantity

On July 17, 2013, Brown was charged in the Circuit Court of Kankakee County for unlawful possession of a controlled substance with intent to deliver between 15 and 100 grams of heroin, and unlawful possession of a weapon by a felon.[12]  On January 29, 2014, charges by the United States were brought in federal court against Brown for possession of 100 grams or more of heroin with the intent to distribute, and possession of a firearm by a convicted felon.[13]  The state's case against Brown was subsequently dismissed by the prosecution on February 13, 2014.[14]

Brown argues his former counsel was ineffective for failing to investigate and challenge the different drug quantities used in his case.  (Brief at 11.)  Brown correctly asserts he was charged with unlawful possession of a controlled substance with the intent to deliver 15 to 100 grams of heroin, pursuant to 720 ILL. COMP. STAT. 570/401(a)(2)(A), in state court, and possession of 100 grams or more of heroin with intent to distribute, pursuant to 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(i) in federal court.  Brown contends his counsel was ineffective for not investigating the change in quantity, and that he was prejudiced at trial and sentencing because he "was not found guilty of 100 or more grams beyond a reasonable doubt."  *Id.*

---

[12] Bill of Indictment, People v. JB Brown, Jr. (Case No. 2013-CF-000286).
[13] *See* Criminal Complaint (ECF No. 1), USA v. J.B. Brown, Jr. (Case No. 14-CR-20007).
[14] Docket, People v. JB Brown, Jr. (Case No. 2013-CF-000286).

To support his contention, Brown argues that before a defendant can be sentenced to a term of imprisonment and "above the statutory maximum provided in § 841(b)(1)(C) or (D)," the Supreme Court's ruling in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), "requires that a drug type and amount be sufficient to trigger the higher statutory maximums of § 841(b)(1)(A) or (B), [and] should be specified in the indictment[,] and must be found by the trier of fact using the reasonable doubt standard." (Brief at 9.) He also argues, "[a]fter *Alleyne* [*v. United States*, 570 U.S. 99 (2013)], the government can no longer benefit from the enhanced penalties in § 841(b)(1) for drug type and quantity[,] unless . . . it alleges those facts in the indictment and the facts are either admitted or proved to a jury beyond a reasonable doubt." *Id.* As such, Brown argues, had his attorney challenged the "change in quantities" before trial, he "would not have been exposed to a mandatory minimum under § 841(b)(B)" and would have been sentenced to a term of 70 to 87 months in prison, as opposed to the 174-month sentence he received. *Id.* at 8-9.

The Government responds by offering the unsupported assertion that state authorities initiated charges against Brown before the drugs for which he was being charged were independently measured and tested. (Resp. at 6.) It then argues Brown was only charged by the federal government after the weight of the heroin was determined. *Id.* It correctly asserts that Brown stipulated to the quantity of heroin found in his possession at his criminal trial. *Id.* It also contends Brown fails to present any evidence the heroin weighed less than 100 grams, and even if his counsel had challenged the weight of the heroin at trial, the challenge would have failed. *Id.*

A stipulation has the legal effect of an admission at trial. *Keller v. United States*, 58 F.3d 1194, 1199 n.8 (7th Cir. 1995). Thus, the Government did not have to prove the drug quantity for which Brown was charged was over 100 grams, as Brown admitted it was, and his admission took the issue from the jury. Furthermore, it is entirely irrelevant if Brown was charged in state court

for one quantity of heroin and federal court for another. Either way, it was the Government's (state or federal) burden to prove the amount of heroin for which it was charging Brown at trial. The burden on the state dissipated when its prosecutor dismissed the charges against Brown in February 2014. Thereafter, it was the federal government's burden to prove beyond a reasonable doubt that Brown possessed 102.7 grams of heroin prior to his arrest. The Government was able to meet its burden when Brown stipulated to the fact that the quantity of heroin depicted in photographic exhibits 2A and 2C equaled 102.7 grams.[15] The stipulation was read to the jury and admitted into evidence on the first day of Brown's Jury Trial on July 29, 2014.[16]

The Supreme Court decisions in *Apprendi* and *Alleyne* are not circumvented by these findings. "*Apprendi* establishes the general rule that any fact that will increase a defendant's sentence beyond the statutory maximum must be found beyond a reasonable doubt by the jury." *United States v. Collins*, 272 F.3d 984, 987 (7th Cir. 2001). "However, in *Apprendi*, the Supreme Court carved out an exception to its general rule for evidence of prior convictions." *Id.* "Consequently, [the Seventh Circuit] [has] held that evidence of a prior conviction that would increase the statutory maximum under § 841(b) need not be submitted to the jury. Additionally, in *Alleyne*, the Supreme Court held that "facts that increase mandatory minimum sentences must be submitted to the jury." But it also observed that the ruling "does not mean that any fact that influences judicial discretion must be found by a jury." *Id.* It concluded, "[w]e have long recognized that broad sentencing discretion, informed by judicial factfinding, does not violate the Sixth Amendment." *Id.*

The statutory maximum sentence for Possession of Heroin with Intent to Distribute under 21 U.S.C. § 841(b)(1)(B)(i) is life imprisonment (not more than 40 years). The statutory minimum

---

[15] Stipulations of Fact, ECF No. 26, USA v. J.B. Brown, Jr. (Case No. 14-CR-20007).
[16] Tr. of Trial Day 1 at 63, ECF No. 72, USA v. J.B. Brown, Jr. (Case No. 14-CR-20007).

for the same charge, with evidence of a prior conviction for a serious drug felony, is "not less than 10 years." 21 U.S.C. § 841 (West 2010). On December 1, 2014, Brown was sentenced to a term of 174 months for his Possession of Heroin with Intent to Distribute charge, which translates to 14 years and 5 months incarceration. The trial court did not impose a sentence above the statutory maximum for Brown's drug conviction. In sentencing Brown to four and one-half years above the statutory minimum, the trial court correctly factored in Brown's possession of a dangerous weapon during the course of the offense,[17] an adjustment for obstruction of justice,[18] and Brown's existing criminal history category of VI.[19] Under *Alleyne*, the aforementioned sentencing enhancements/factors did not need to be found by a jury beyond a reasonable doubt in order to be valid. Accordingly, Brown's claim that his trial attorney demonstrated ineffective assistance by failing to challenge the discrepancy in drug quantity fails, and his claim is DENIED.

### C.    Failure to Produce Witnesses at Trial

Brown next argues that prior counsel should have demanded the appearance of the forensic scientist who calculated the weight of the heroin found in his home instead of stipulating to the weight of the drug at trial. (Brief at 13.) Only then, he insinuates, could the scientist affirm whether she calculated the weight of the drugs to include the weight of its plastic wrappings as opposed to the weight of the substance alone. *Id.* Brown adds that counsel should have also summoned the parties who authored the incriminating text messages found on his mobile phone in order for him to confront his accusers at trial. (Brief at 12.) The Government argues it was reasonable trial strategy for Brown's counsel to focus on the stronger argument that Brown did not possess the heroin than to raise a weaker challenge by contesting the amount of heroin found at

---

[17] Revised Presentence Investigation Report, ECF No. 47 at 6, USA v. J.B. Brown, Jr. (Case No. 14-CR-20007).
[18] *Id.* at 7.
[19] *Id.* at 7-11.

the scene. (Resp. at 6-7.) It adds that Brown fails to demonstrate how cross-examining the forensic scientist would have proved she incorrectly calculated the weight of the drug and asserts that Brown failed to allege the drugs weighed less than 100 grams at trial, regardless of the scientist's testimony. *Id.* at 7.

The decision of Brown's attorney to "focus[ ] on some issues to the exclusion of others" is "strongly presum[ed]" to be a reasonable tactical choice, rather than evidence of ineffective assistance of counsel. *Yarborough v. Gentry*, 540 U.S. 1, 5 (2003). For example, "an attorney who stipulated that his client possessed over seventy-five pounds of marijuana did not provide ineffective assistance of counsel when he did so in order to focus on his claim that the defendant did not know the marijuana was in his car." *Ruiz-Marin v. United States*, No. 13-297, 2013 WL 6713302, at *3 (D. Idaho Dec. 18, 2013) (citing *Gibson v. Shepard*, 246 F. App'x 431, 433 (9th Cir. 2007)).

In summarizing his argument that his trial attorney failed to call certain witnesses at trial, Brown fails to provide any evidence (or a claim in an affidavit), that the outcome of the proceeding would have been different had his attorney called the state's forensic scientist and contested the amount of heroin found at his home. (*See* ECF No. 10.) Brown forgets that his main defense at trial was one of mistaken identity. He also forgets his contention at trial that he had no connection to the cell phone found at his residence, nor to the text messages found within it. Finally, Brown fails to acknowledge that his attorney attempted to challenge the scope of the search warrant and the inclusion of cell phone text messages with a pretrial motion to suppress which was ultimately denied.[20]

---

[20] Motion to Suppress, ECF No. 29, USA v. J.B. Brown Jr. (Case No. 14-CR-20007).

Brown's former counsel had the prerogative to be selective with trial strategy. Counsel faced a scenario with a confidential informant, a verified drug purchase, a valid search warrant, and a surplus of condemning evidence against his client. The Court fails to find counsel's failure to call the state's forensic scientist at trial an error so serious that Brown was prejudiced as a result. Moreover, Brown fails to demonstrate how counsel's decision to forego the cross examination of the forensic scientist and his failure to call the parties to the incriminating text messages Brown claimed to have never sent, were outside of sound trial strategy. Accordingly, Brown's claim that his attorney demonstrated ineffective assistance by failing to produce witnesses at trial is DENIED.

### D.     Failure to Challenge Search Warrant

Lastly, Brown argues that his former counsel should have challenged the validity of the warrant issued to search his residence. (Brief at 15.) He contends that had counsel challenged the validity of the search warrant in a motion to suppress prior to trial, he would have prevailed as a matter of law and the outcome of the case would have been drastically different. *Id.* at 17. Specifically, Brown asserts that counsel should have argued the search warrant was invalid because it failed to list Brown by name. *Id.* at 15. He also argues that there was no corroborating evidence or eye witness events to support the Jane Doe affidavit included in the complaint for the warrant. *Id.* at 16. The Government responds, albeit without reference to supporting caselaw, that there is no requirement that a search warrant contain a name, and that it would have been frivolous for Brown's former counsel to bring such a challenge. (Resp. at 7.)

Under Illinois law, a valid search warrant must "particularly describe[ ] the place *or* person, or both, to be searched and the things to be seized[.]" 725 ILCS 5/108-3(a) (West 2014) (emphasis added). "The purpose of this requirement is to prevent the use of general warrants that would give police broad discretion to search and seize." *People v. Burmeister*, 728 N.E.2d 1260, 1266

(Ill. App. Ct. 2000). Constitutional requirements relating to searches are satisfied if the warrant describes the premises to be searched with reasonable certainty, and a technical description is unnecessary. *People v. Holton*, 158 N.E. 134, 136 (Ill. 1927). A warrant is sufficiently descriptive if it enables the officer, with reasonable effort, to identify the place. *People v. Lavendowski*, 160 N.E. 582, 586 (Ill. 1928). If the property is sufficiently recognizable from the description to enable the officer to locate the premises with definiteness and certainty, it is adequate. *Id.* A warrant must simply identify the place to be searched to the exclusion of all others. *Burmeister*, 728 N.E.2d at 1267.

In Brown's case, the search warrant described a "one story, single-family residence, a dwelling with red brick that is located at a place commonly known and marked as 7453 E[ast] 1st St[reet], St. Anne, Illinois" (ECF No. 7 at 5), which was sufficiently descriptive. The fact that the warrant did not name Brown is of no consequence. Police were able to pinpoint the address listed on the warrant through an informant who testified that she was in the residence within ten days of June 26, 2013, for the purpose of purchasing heroin. The informant also positively identified Brown (a.k.a. "Coco") with a Kankakee County booking photograph of Brown and a matching birthdate of July 10, 1977. *Id.* at 4. Finally, the informant testified that she knew what heroin looked like, as she had purchased it in the past, and swore that she specifically purchased heroin four times from Brown at the address listed on the search warrant within the past three months. *Id.* As such, there was sufficient probable cause to issue the search warrant in question and the warrant was facially valid. Counsel's challenge to the contrary, at least as to the argument(s) Brown suggests, would have been frivolous and would have failed to affect the ultimate outcome of the case. Accordingly, Brown's claim of ineffective assistance of counsel for failure to challenge the search warrant is DENIED.

## III. PETITIONER'S MOTION TO INVOKE RULE 12

On May 21, 2018, Petitioner filed his Motion to Invoke Rule 12, reiterating the claims he outlined in his original § 2255 Motion and requesting the Court vacate his conviction, dismiss the indictment against him with prejudice, order his immediate release from federal custody, and "invoke the Federal Rule of Civil Procedures under the authority given at Rule 12 for MAS." (ECF No. 13.)  Given the vagueness and ambiguity of Petitioner's demand, and the fact that Rule 12 of the Rules Governing Section 2255 Proceedings for the United States District Courts has been applied to the Court's aforementioned analysis, the Court DENIES Petitioner's Motion.

## IV. DENIAL OF CERTIFICATE OF APPEALABILITY

Per Rule 11(a) of the Rules Governing Section 2255 Proceedings, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  A habeas petitioner is entitled to a certificate of appealability only if he can make a substantial showing of the denial of a constitutional right. *Evans v. Circuit Court of Cook County*, 569 F.3d 665, 667 (7th Cir. 2009). Under this standard, Petitioner must demonstrate that reasonable jurists would find the Court's assessment of his Section 2255 claims debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  The Court concludes that Petitioner has not made a substantial showing that reasonable jurists would differ regarding the merits of his claims. To the extent that Petitioner attempts to demonstrate that his attorney committed error during his criminal trial, all of his claims fail the ineffective assistance of counsel standard as outlined in *Strickland v. Washington*, 466 U.S. 668, 694 (1984).  Accordingly, the Court declines to certify any issues for appeal pursuant to 28 U.S.C. § 2253(c)(2).

## CONCLUSION

For the reasons stated herein, Petitioner's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (ECF No. 1), and Motion to Invoke Rule 12 (ECF No. 13) are DENIED. This matter is now TERMINATED. The Clerk of the Court is DIRECTED to close this case.


Entered on April 23, 2019.        /s/ Michael M. Mihm
                                                 Michael M. Mihm
                                                 United States District Judge